BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General, Civil Division
ARUN G. RAO
Deputy Assistant Attorney General, Civil Division
AMANDA N. LISKAMM
Director
RACHAEL L. DOUD
Assistant Director
ZACHARY A. DIETERT
Trial Attorney
      Consumer Protection Branch
      Civil Division, U.S. Department of Justice
      450 5th Street, NW, Suite 6400-South
      Washington, DC 20044-0386
      Telephone: (202) 616-9027
      Facsimile: (202) 514-8742
      Email: Zachary.A.Dietert@usdoj.gov

Attorneys for Plaintiff, United States of America

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    vs.<br><br>XCAST LABS, INC.,<br><br>        Defendant. | No. 23-cv-03646<br><br>**COMPLAINT FOR PERMANENT INJUNCTION, CIVIL PENALTIES, AND OTHER RELIEF AND DEMAND FOR JURY TRIAL** |

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC") pursuant to Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 56(a)(1), for its Complaint alleges:

1.     Plaintiff brings this action under Sections 5(m)(1)(A), 13(b), 16(a), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45 (m)(1)(A), 53(b), 56(a), 57b, and Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6105, to obtain permanent injunctive relief, civil penalties, and other relief for Defendant's acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), as amended, 16 C.F.R. Pt. 310.

## SUMMARY OF ALLEGATIONS

2.     This case involves billions of illegal robocalls delivered to American consumers using services provided by Defendant XCast Labs, Inc. ("XCast"). As set forth in detail below, XCast has assisted its customers in making telemarketing calls to consumers that: (1) delivered a prerecorded message, in violation of 16 C.F.R. § 310.4(b)(1)(v); (2) were placed to numbers listed on the National Do Not Call (DNC) Registry, in violation of 16 C.F.R. § 310.4(b)(1)(iii)(B); (3) failed to disclose the identity of the seller, in violation of 16 C.F.R. § 310.4(d)(1); (4) falsely claimed affiliations, including with government entities, in violation of 16 C.F.R. § 310.3(a)(2)(vii); (5) made false or misleading statements to induce purchases or contributions, in violation of 16 C.F.R. § 310.3(a)(4); and (6) transmitted false or deceptive caller ID numbers, in violation of 16 C.F.R. § 310.4(a)(8)).

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

4.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(2), (c)(3), and (d), and 15 U.S.C. § 53(b).

**DEFENDANT**

5.     Defendant XCast Labs, Inc. ("XCast"), is a California corporation with its principal place of business at 1880 Century Park East, Suite 612, Los Angeles, California. XCast transacts or has transacted business in this District and throughout the United States.

**COMMERCE**

6.     At all times relevant to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**THE TELEMARKETING SALES RULE AND THE NATIONAL DO NOT CALL REGISTRY**

7.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101–08. The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Pt. 310.

8.     Among other things, the 2003 amendments to the TSR established a do not call registry, maintained by the FTC (the "National DNC Registry" or "Registry"), of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or online at donotcall.gov.

9.     Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations through a toll-free telephone call, online at donotcall.gov, or by otherwise contacting law enforcement authorities.

10.     The TSR defines "telemarketing" as a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. 16 C.F.R. § 310.2(gg).

11.     Under the TSR, a "telemarketer" is any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff).

12.     A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration. 16 C.F.R. § 310.2(dd).

13.     The FTC allows sellers, telemarketers, and other permitted organizations to access the Registry online at telemarketing.donotcall.gov, to pay any required fees, and to download the numbers not to call.

14.     Under the TSR, an "outbound phone call means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution." 16 C.F.R. § 310.2(x).

15.     The TSR prohibits sellers and telemarketers from initiating an outbound phone call to a number on the Registry, unless the seller or telemarketer can demonstrate that it has obtained the call recipient's express written agreement to receive such calls from it or can demonstrate that it already has an established business relationship with the call recipient. 16 C.F.R. § 310.4(b)(1)(iii)(B).

16.     The TSR prohibits initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service, unless the seller or telemarketer has an express written agreement from the recipient to receive such prerecorded messages from it. 16 C.F.R. § 310.4(b)(1)(v). Calls delivering prerecorded messages are often referred to as "robocalls."

17.     During an outbound telephone call to induce the purchase of goods or services, the TSR requires a telemarketer to disclose the identity of the seller truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call. 16 C.F.R. § 310.4(d)(1).

18.     The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, their affiliation with, or

3

1  endorsement or sponsorship by, any person or government entity. 16 C.F.R. §

2  310.3(a)(2)(vii).

3      19.   The TSR prohibits sellers and telemarketers from making false or

4  misleading statements to induce any person to pay for goods or services or to

5  induce a charitable contribution. 16 C.F.R. § 310.3(a)(4).

6      20.   The TSR prohibits sellers and telemarketers from causing inaccurate

7  caller ID information to be transmitted to call recipients. 16 C.F.R. § 310.4(a)(8).

8  Transmitting inaccurate caller ID information is often referred to as "spoofing."

9      21.   It is a violation of the TSR for any person to provide substantial

10  assistance or support to any seller or telemarketer when that person knows or

11  consciously avoids knowing that the seller or telemarketer is engaged in a practice

12  that violates the TSR.

13      22.   Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C.

14  § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation

15  of the TSR constitutes an unfair or deceptive act or practice in or affecting

16  commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

17      23.   Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and

18  Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), authorize this Court to

19  award monetary civil penalties of not more than $50,120.00 for each violation of

20  the TSR assessed after January 11, 2023, including penalties whose associated

21  violation predated January 11, 2023.

22                    **DEFENDANT'S BUSINESS ACTIVITES**

23      24.   XCast is a nationwide provider of Voice over Internet Protocol (VoIP)

24  services, including Session Initiation Protocol (SIP) termination. VoIP is

25  technology that allows a person to make voice calls using a broadband internet

26  connection as opposed to a regular (analog) phone line. In other words, VoIP calls

27  are phone calls that are sent over the internet.

28

25.     Telemarketers who blast illegal prerecorded calls and other marketing calls to millions of American consumers typically use VoIP service providers to transmit those calls. Multiple VoIP providers often participate in transmitting a given call from its originator (often a telemarketer) to a termination point (most often a consumer's telephone).

26.     XCast's VoIP services include "origination" services. Origination is beginning the transmission of a call from the telemarketer or company which initiated the call. XCast also serves as a mid-stream provider, transmitting calls from and to other VoIP providers.

27.     Since at least January 1, 2018, XCast has, through its VoIP services, transmitted billions of illegal robocalls that sellers and telemarketers placed to American consumers in violation of the TSR. Some of these calls marketed goods and services with a history of deceptive sales practices, such as extended automobile warranties.

28.     Many of the illegal robocalls XCast has transmitted were fraudulent telemarketing scams. They include, for example, robocalls falsely claiming affiliations with government entities such as the Social Security Administration, threatening to cut off a call recipient's utility service unless they make immediate payments, or claiming that a call recipient's credit card has been charged and they must act promptly to have the charge refunded.

29.     XCast's own records of the calls it transmits make clear that it has transmitted huge numbers of illegal calls. XCast's call data records ("CDRs") include information such as the exact date and time of a call, the calling number, the called number, and the exact duration of the call. CDRs that XCast has produced to the FTC of calls it transmitted for just three of its customers, for example, reveal that nearly two billion of those calls were placed to numbers on the National DNC Registry.

30.   XCast's CDRs are also rife with massive volumes of very short-duration calls, which are a distinct feature of fraudulent robocall campaigns. For example, CDRs XCast produced to the FTC show an average call duration of only about 6.5 seconds for nearly two billion calls that were placed to numbers on the National DNC Registry, with the overwhelming majority of those calls lasting less than ten seconds.

31.   On scores of occasions dating back to at least December 2018, USTelecom's Industry Traceback Group (ITG), the official U.S. Federal Communications Commission (FCC)-designated consortium of telephone and broadband industry companies, has notified XCast that XCast routed and transmitted suspected illegal robocall traffic on behalf of upstream carriers or end-users.

32.   ITG notified XCast of these suspected illegal calls through "Traceback Requests," which are emails ITG sends to voice service providers seeking assistance with identifying the source of suspicious traffic that the voice service provider routed or transmitted.

33.   An ITG "Traceback" is a network-based process that seeks out the source of suspicious traffic by beginning at a terminating voice service provider and systematically tracing a call to preceding providers. ITG finds that suspicious traffic "is identifiable by a pattern of voice calls that: (1) transit one or more Voice Service Provider networks and (2) have characteristics associated with abusive, unlawful, or fraudulent practices."

34.   ITG sent XCast over 100 Traceback Requests in 2020 and over 90 more in 2021. For dozens of these Traceback Requests, XCast served as either the originator of the suspected robocall or the point-of-entry (i.e., the first service provider within a call's path to take an illegal robocall from a foreign service provider).

35.     Many of the Traceback Requests that ITG sent XCast expressly noted that the calls at issue were perpetrating fraud. The Traceback Requests also provided additional details about the calls XCast had transmitted. They stated, for example, that some of the calls impersonated federal officials, threatened to cut off recipients' utilities, and used corporate names without permission. The Traceback Requests also noted other problems with the calls XCast had transmitted, including that they delivered pre-recorded messages, failed to identify the caller or seller, and were delivered with spoofed caller ID information.

36.     To help XCast identify the source(s) of the suspected illegal robocall traffic and take effective steps to mitigate it, some of ITG's Traceback Requests also provided XCast access to audio of the prerecorded messages and CDRs for each incident.

37.     In addition to the scores of Traceback Requests XCast received, law enforcement also put XCast on notice of numerous red flags relating to its provision of VoIP services to purveyors of unlawful robocalls. For example, in August 2019, XCast received a subpoena from federal prosecutors for information and call records relating to XCast's customer E Sampark, a VoIP provider based in India that was subsequently indicted for conspiracy to commit wire fraud through a scheme involving fraudulent robocalls. In January 2021, XCast received a civil investigative demand ("CID") from the FTC requesting information concerning its customers Dialcom aka Gudelor (a California based telecommunications provider) and RSCom Ltd. (a Canadian based telecommunications provider) and informing XCast that the records were being sought as part of an investigation into potential violations of the TSR. XCast also received additional subpoenas, CIDs, or other law enforcement inquiries alerting it to potentially illegal calls, including from state government agencies who indicated their requests related to potential illegal telemarketing.

38.     XCast has also repeatedly received complaints from other sources, including multiple downstream providers, that it was transmitting illegal calls, including fraudulent scam robocalls and calls with spoofed caller ID information.

39.     On January 29, 2020, the FTC sent warning letters to XCast and a select group of other VoIP service providers to caution them that assisting and facilitating illegal telemarketing or robocalling was against the law and inform them of lawsuits the FTC and Department of Justice had brought against VoIP providers for allegedly assisting and facilitating illegal robocalls. Despite this warning that it could face liability for assisting and facilitating TSR violations, XCast continued to transmit hundreds of millions of illegal telemarketing calls to American consumers.

40.     Even after being alerted to red flags concerning the legality of specific customers' calls, XCast continued to transmit calls for those customers. For example, XCast continued transmitting calls for E Sampark for more than a year after receiving a subpoena from federal prosecutors in August 2019 relating to that customer, and it continued transmitting calls for its customer RSCom for more than two years after it began receiving complaints, which was at least as early as March 2019, that calls XCast transmitted for RSCom were illegal.

41.     XCast's experience as a nationwide provider of VoIP services, the numerous indicia of unlawful robocall campaigns contained in its own records, and the repeated warnings and alerts it received from ITG, government officials, and others demonstrate that since at least January 1, 2018, XCast knew or consciously avoided knowing that providers were using XCast's services to transmit calls that violated the TSR.

42.     Specifically, XCast received direct notice from multiple sources that its services were transmitting calls that failed to disclose the identity of the seller, falsely claimed affiliations, including with government entities, made false or misleading statements to induce purchases, and included spoofed caller ID

1    information. XCast also received direct notice that its services were transmitting

2    robocalls and calls to numbers on the National DNC Registry. Based on the

3    massive volumes of such calls, their short duration, and their often fraudulent

4    nature, it should also have been clear to XCast that it was transmitting robocalls for

5    which the sellers and telemarketers could not demonstrate, as the TSR requires,

6    that they had obtained an express agreement from each call's recipient to receive

7    pre-recorded calls from that seller or telemarketer. These same factors should have

8    also made clear to XCast that it was transmitting calls to phone numbers on the

9    National DNC Registry belonging to consumers for whom the seller or

10   telemarketer could not demonstrate having obtained an express agreement or

11   having an established business relationship.

12          43.    Based on the facts and violations of law alleged in this Complaint,

13   Plaintiff has reason to believe that Defendant is violating or is about to violate laws

14   enforced by the Commission.

15                                    **COUNT I**

16          **ASSISTING AND FACILITATING VIOLATIONS OF**

17               **THE TELEMARKETING SALES RULE**

18          44.    As described in paragraphs 7–43, above, Defendant XCast has, in

19   numerous instances, provided substantial assistance and support, through the

20   provision of VoIP services, to one or more "sellers" and/or "telemarketers"

21   engaged in "telemarketing," as defined by the TSR, 16 C.F.R. § 310.2, whom

22   XCast knew or consciously avoided knowing:

23          1)    Initiated or caused the initiation of outbound calls that delivered

24                prerecorded messages to induce the purchase of goods or

25                services, in violation of 16 C.F.R. § 310.4(b)(1)(v);

26          2)    Initiated or caused the initiation of outbound telephone calls to

27                telephone numbers on the National DNC Registry to induce the

28

purchase of goods or services, in violation of 16 C.F.R.
§ 310.4(b)(1)(iii)(B);

3) Failed to disclose the identity of the seller of the goods or services truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, in violation of 16 C.F.R. § 310.4(d)(1);

4) Misrepresented, directly or by implication, in the sale of goods or services, the seller's or telemarketer's affiliation with, or endorsement or sponsorship by, a person or government entity, in violation of 16 C.F.R. § 310.3(a)(2)(vii);

5) Made false or misleading statements to induce a person to pay for goods or services or to induce a charitable contribution, in violation of 16 C.F.R. § 310.3(a)(4); and

6) Failed to transmit or cause to be transmitted the accurate telephone number and name of the telemarketer to any caller identification service in use by a recipient of a telemarketing call, in violation of 16 C.F.R. § 310.4(a)(8).

45. Defendant's substantial assistance and support violates the TSR, 16 C.F.R. § 310.3(b).

## CONSUMER INJURY

46. Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendant's violations of the TSR.

47. Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

48. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any violation of any provision of law enforced by the FTC.

49.     Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S. C. § 2461, the Federal Civil Penalties Inflation Adjustment Act of 2015, Public Law 114-74, sec. 701, 129 Stat. 599 (2015), and Section 1.98(d) of the FTC's Rule of Practice, 16 C.F.R. § 1.98(d), authorizes this Court to award monetary civil penalties of not more than $50,120.00 for each violation of the TSR assessed after January 11, 2023, including penalties whose associated violation predated January 11, 2023, that is made with actual knowledge or knowledge fairly implied on the basis of the objective circumstances that such act is unfair or deceptive and is prohibited by such rule.

50.     Defendant's violations of the TSR described above were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendant;

B.     Award Plaintiff monetary civil penalties from Defendant for every violation of the TSR; and

C.     Award any additional relief as the Court determines to be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

1
2      Dated: May 12, 2023              Respectfully submitted,

3                                       BRIAN M. BOYNTON
4                                       Principal Deputy Assistant Attorney General

5                                       ARUN G. RAO
6                                       Deputy Assistant Attorney General

7                                       AMANDA N. LISKAMM
8                                       Director, Consumer Protection Branch

9                                       RACHAEL L. DOUD
10                                      Assistant Director

11                                      /s/ Zachary A. Dietert
12                                      ZACHARY A. DIETERT
                                        Trial Attorney
13
14                                      Consumer Protection Branch
15                                      Civil Division, U.S. Department of Justice
                                        450 5th Street, NW, Suite 6400-South
16                                      Washington, DC 20044-0386
17                                      Tel.:   (202) 616-9027
                                        Fax:   (202) 514-8742
18                                      Email: Zachary.A.Dietert@usdoj.gov
19
                                        Counsel for Plaintiff United States of America
20
21     Of Counsel:

22     THOMAS M. BIESTY
       FRANCES KERN
23     Federal Trade Commission
24     600 Pennsylvania Ave., NW, Mailstop CC-5201
       Washington, DC 20580
25     (202) 326-3043 (Biesty)
26     (202) 326-2391 (Kern)
27     tbiesty@ftc.gov
       fkern@ftc.gov
28